Rena C. Williams, *Appellant,*

vs.

The Navajo Election Commission
and Board of Election Supervisors, *Appellees.*
Decided January 22, 1985

## OPINION

*Before McCabe, Chief Justice, Brown and Hilt, Associate Justices.*

*Leonard Watchman, Esq., Window Rock, Navajo Nation (AZ) for
Appellant; Donna C. Bradley, Esq., Window Rock, Navajo Nation
(AZ) for Appellees; and Lawrence A. Ruzow, Esq., Window Rock,
Navajo Nation (AZ) for Jimmie Bitsuie.*

This matter came before the Court for hearing on October 17, 1984, on the issue of whether the Appellant's statement of election contest as contained in her original Statement of Grievance and the amended Statement of Grievance was sufficient on its face so as to require a hearing.

On November 2, 1982, an election was had in Fort Defiance for the purpose of electing two Navajo Tribal Council delegates. The two positions subsequently became vacant and two special elections were held on February 14, 1984, and April 17, 1984.

On the day of the April 17, 1984, election the *Navajo Times* contacted the chapter house regarding the time for the polls to be open. The paper was told that the polls closed at 5:00 p.m. rather than 7:00 p.m. as mandated by 11 N.T.C. §19.

Appellant Rena Willliams was a candidate in the April 17, 1984, election. She lost to the only other candidate, Jimmie Bitsuie, by 15 votes.

On April 26, 1984, appellant filed a Statement of Grievance with the Navajo Board of Election Commission (hereinafter referred to as Commission). The Statement of Grievance contained the following allegations:

1. A professional and impartial attitude was not demonstrated by the election representative as required by 11 N.T.C. Chapter 13 §245.

2. The election representative's failure to insure that the proper time for the polls to close was released to the *Navajo Times* was a violation of 11 N.T.C. Chapter 13; and

3. An unspecified percentage of the registered voters did not vote and this failure to vote was a direct result of the publication of the wrong time for the polls to close.

On May 10, 1984, appellant submitted an amended Statement of Grievance. The amended Statement of Grievance contained what were labeled as "First Cause of Action" and "Second Cause of Action". The "First Cause of Action" sets forth the publication of wrongful conduct of the election representative. The "Second Cause of Action" states that Jimmie Bitsuie and other unnamed persons slandered appellant prior to the election. The amended Statement of Grievance was accompanied by certain documents including an affidavit from a chapter employee that she had been acting as receptionist on April 17, 1984, and that she had released the wrong time for the polls to the *Navajo Times*. There was also a Petition signed by twenty-one registered voters of the Fort Defiance Community stating that they felt the publication of the wrong time caused some voters not to vote and caused appellant to lose the election.

On May 10, 1984, the Commission reviewed the original Statement of Grievance. It is not clear to the Court whether the amended Statement of Grievance was reviewed. The Court is of the opinion, however, that the First Cause of Action of the amended Statement of Grievance did not enlarge upon the allegations of the original Statement of Grievance and that the allegations of the Second Cause of Action were outside the scope of the authority and review of the Navajo Board of Election.

On May 21, 1984, appellant filed a Notice of Appeal. On June 29, 1984, the Court of Appeals entered an Order allowing an appeal on the issue of whether the statement of election contest as contained in the Statement of Grievance and the amended Statement of Grievance was sufficient on its face so as to require a hearing.

The Navajo election laws for electing the Chairman, Vice Chairman, and members of the Navajo Tribal Council are contained in 11 N.T.C. Chapters 1-13. Chapter 13 is entitled "Penal Provisions." The provisions of that chapter deal with bribery of electors, coercion of electors, intimidation of an elector by his employer, interference with an election officer, violation of duty by election officers, and illegal registration for voting. The chapter further sets forth penalties for violation of the provisions which are enforced through the courts or the Advisory Committee.

Section 245 of Chapter 13 provides that a member of the Election Com-

mission shall not "knowingly and willfully fail or neglect to perform any duty under any part of this chapter." A Statement of Grievance alleging a violation of 11 N.T.C. Chapter 13, § 245 raises the question of whether such an alleged violation is within the scope of review by the Commission. The Court will not at this time decide whether violations of Chapter 13 are the exclusive jurisdiction of the courts and the Advisory Committee but will review appellant's Statements of Grievance for whether, on their face, they sufficiently allege an election unfairness or fraud under 11 N.T.C. Chapter 1-13 as a whole and under the guidelines for election review set out in *Johnson v. June*, 4 Nav. R. 79 (1983), (hereinafter cited as *Johnson.*)

*Johnson* sets forth standards for the court to apply when reviewing the actions of the Board in matters of election dispute. These standards follow the theories that election results are presumed to be regular and proper and that the contestant must overcome that presumption by showing that the alleged misconduct or irregularity was of such a nature that the outcome of the election was changed or a fair election was prevented.

Nowhere in the Statements of Grievance filed by the appellant is there any connection made between the publication of the wrong time for the polls to close and failure of any registered voter to vote for appellant. Even more telling, there is not a showing that a single registered voter failed to vote for either candidate because of a belief that the polls closed at 5:00 p.m. rather than 7:00 p.m. Appellant has not overcome the presumption that the election results were regular and proper. As this Court stated in *Johnson* "Speculation on the conduct of an election is not enough to overturn it. . . ." Appellant's Statements of Grievance presented only speculation that the election was unfair or improper and that the outcome of the election was changed as a result of that unfairness or impropriety.

The same analysis applies to appellant's allegations that a professional and impartial attitude was not demonstrated by the election representative as required by 11 N.T.C. Chapter 13, § 245. A person's attitude is one of subjective interpretation and for an attitude to ever rise to the level of being judicially reviewable, there must be specific instances of conduct demonstrating the alleged "attitude." Appellant's Statements of Grievance do not contain those specific instances and do not show that even one voter failed to cast a ballot because of an election official's improper attitude, much less that the result of the election was changed. Further, as the court pointed out above, Chapter 13 deals with specific prohibited conduct and alleged violations of Chapter 13 must set forth conduct prohibited by that Chapter.

The allegation that an unspecified percentage of the registered voters did not vote as a direct result of the publication of the wrong time for the polls to close suffers from the same failure to show that any voter failed to vote because of that publication. Appellant has not even demonstrated that a smaller percentage of people voted in the April 17, 1984, election than in other special elections.

Even though the court directed appellant to specify precisely which election law was violated, the appellant chose to rely upon her original assertions that 11 N.T.C. Chapter 13, §245 was violated by the release of the wrong information to the *Navajo Times*. As the court pointed out above, Chapter 13 deals with specific wrongful acts in connection with elections. Section 245 makes it unlawful for the Chairman of the Election Commission, a member of the Election Commission, any registrar, poll judge, poll clerk, or Special Election Supervisor to "*knowingly* and *willfully* fail to neglect to perform any duty under any part of this chapter" (emphasis added). Appellant neither sets forth the section violated nor claims that any election official knowingly and willfully violated that section. The affidavit supplied by an Angela Davidson regarding the incorrect voting time states that she is usually employed as a cook at the chapter house but on the day of the special election she was acting as a receptionist. She states that she gave the wrong information to the *Navajo Times* but there is no assertion that she released the incorrect poll closing time at the direction of an election official.

The court does not hold that "knowingly and willfully" is the standard by which all alleged violations of the election code will be reviewed. It is the standard established for alleged violation by election officials of 11 N.T.C. Chapter 13.

Although the burden of showing a violation of the election code is on the one contesting the election, the Court has reviewed 11 N.T.C. Chapters 1-13 together with the Statements of Grievance for any possible construction of a violation of the election laws and can find none.

Finally, the Court comes to the issue of whether the Commission acted properly in dismissing the grievance without a hearing.

11 N.T.C. § 51 sets forth the procedures for election contests. 11 N.T.C. § 51 (17) (a) states:

Within ten days of the incident complained of or the election, the complaining person must file with the Commission a statement setting forth the reasons why he believes the election law has not been complied with.

If, on its face, the statement of election contest is insufficient under the election law, the statement shall be dismissed by the Navajo Election Commission.

The Commision determines whether the Statement of Grievance sufficiently states a violation of the election law. This means that the grievance must specify what election law was violated. It must also contain sufficient facts that if proven to be true would indeed constitute a violation of the law. Further, under *Johnson* these facts must tend to rebut the presumption that the election was fair and show that but for the violation of the election law the result would have been different.

The function of this Court in reviewing the actions of the Commission is

to determine whether the Commission abused its discretion or failed to follow its procedures. The Court cannot find that the Commission abused its discretion to determine the sufficiency of the Statements of Grievance or failed to follow its procedures.

The decision of the Commission is affirmed.